People v Demas (2025 NY Slip Op 05991)

People v Demas

2025 NY Slip Op 05991

Decided on October 30, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 30, 2025

113265 CR-23-0448
[*1]The People of the State of New York, Respondent,
v
Donald Demas, Appellant.

Calendar Date:September 4, 2025

Before:Garry, P.J., Clark, Aarons, Reynolds Fitzgerald and Ceresia, JJ.

Stephen W. Herrick, Public Defender, Albany (James A. Bartosik Jr. of counsel), for appellant.
Lee C. Kindlon, District Attorney, Albany (Emily Schultz of counsel), for respondent.

Reynolds Fitzgerald, J.
Appeals (1) from a judgment of the County Court of Albany County (William Carter, J.), rendered March 13, 2019, convicting defendant upon his plea of guilty of the crime of criminal sale of a controlled substance in the second degree, and (2) by permission, from an order of the Supreme Court (Roger McDonough, J.), entered November 22, 2021 in Albany County, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, without a hearing.
Defendant engaged in three controlled buys of cocaine with a confidential informant (hereinafter CI) on October 12, 18 and 25, 2016. After a lengthy course of proceedings, including two indictments before two different grand juries, a three-count superseding indictment was returned in December 2017, charging defendant with criminal sale of a controlled substance in the first degree and two counts of criminal sale of a controlled substance in the second degree. Defendant moved to dismiss the superseding indictment arguing that the evidence was legally insufficient and based upon hearsay evidence, which County Court denied. In satisfaction thereof, defendant subsequently pleaded guilty to one count of criminal sale of a controlled substance in the second degree and waived his right to appeal. Defendant was sentenced to seven years in prison, to be followed by five years of postrelease supervision. Thereafter, defendant unsuccessfully moved, pursuant to CPL 440.10, to vacate the judgment of conviction arguing, as relevant here, that the grand jury proceeding was defective due to prosecutorial misconduct. Defendant appeals from the judgment of conviction and, by permission, from the denial of his CPL article 440 motion.
Defendant contends that the indictment must be dismissed because the integrity of the grand jury proceeding was impaired due to the prosecutor engaging in pervasive misconduct. He argues that said misconduct included the People's reference to the indictment as a "superseding" indictment, failure to discharge grand jurors who knew the witnesses, and the People intentionally eliciting false evidence from an investigator witness. Although a guilty plea and a waiver of the right to appeal generally mark the end of a criminal case, "the presence of alleged jurisdictional or constitutional defects in the grand jury proceeding that implicate the integrity of the process may survive" (People v Greene, 171 AD3d 1407, 1408 [3d Dept 2019]; see People v Hafer, 223 AD3d 1123, 1124 [3d Dept 2024]). Assuming, but not deciding, that defendant has asserted jurisdictional matters and rights of a constitutional dimension, rather than evidentiary or technical matters, as well as the prosecutor's fair dealing, his contentions are not forfeited by his plea and appeal waiver (see People v Manragh, 32 NY3d 1101, 1102 [2018]; People v Hansen, 95 NY2d 227, 231 [2000]; People v Sheppard, 221 AD3d 1513, 1514 [4th Dept 2023], lv denied 41 NY3d 985 [2024]).
A grand jury proceeding is defective, and [*2]dismissal of the indictment is warranted, when it "fails to conform to the requirements of [CPL article 190] to such degree that the integrity thereof is impaired and prejudice to the defendant may result" (CPL 210.35 [5]; see People v Malloy, 166 AD3d 1302, 1303 [3d Dept 2018], affd 33 NY3d 1078 [2019]). "Dismissal of an indictment is a drastic, exceptional remedy and should thus be limited to those instances where prosecutorial wrongdoing, fraudulent conduct or errors potentially prejudice the ultimate decision reached by the grand jury" (People v Jenne, 224 AD3d 953, 954 [3d Dept 2024] [internal quotation marks and citations omitted], lv denied 42 NY3d 927 [2024]; see People v Henriquez, 173 AD3d 1268, 1268 [3d Dept 2019]). "In general, this demanding test is met only where the prosecutor engages in an over-all pattern of bias and misconduct that is pervasive and typically willful, whereas isolated instances of misconduct, including the erroneous handling of evidentiary matters, do not merit invalidation of the indictment. The statutory test, which does not turn on mere flaw, error or skewing is very precise and very high" (People v Thompson, 22 NY3d 687, 699 [2014] [internal quotation marks, brackets, ellipsis and citations omitted]). "The likelihood of prejudice turns on the particular facts of each case, including the weight and nature of the admissible proof adduced to support the indictment and the degree of inappropriate prosecutorial influence or bias" (People v Henriquez, 173 AD3d at 1268 [internal quotation marks and citation omitted]; see People v Wilkinson, 166 AD3d 1396, 1398 [3d Dept 2018], lv denied 32 NY3d 1179 [2019]).
The grand jury was presented with the testimony of two investigator witnesses, along with the presentation of video and audio footage of three controlled buys. The prosecutor began the proceeding with the statement that the People are presenting a three-count superseding indictment charging the defendant and went on to articulate the charges. In our view, this passing reference to the "superseding indictment," without further information or explanation, did not impair the integrity of the grand jury proceeding or otherwise prejudice defendant as the jurors did not appear to concentrate on the phrase, did not ask questions pertaining to this phrase, nor was any improper information given by the People (see People v Coppins, 173 AD3d 1459, 1461 [3d Dept 2019], lv denied 34 NY3d 929 [2019]).
Next, the minutes of the grand jury presentment do reflect that three grand jurors acknowledged that they knew one of the two witnesses. However, in each instance the prosecutor inquired whether the juror could be fair and impartial, and each answered unequivocally that he or she could do so. While the prosecutor did not voir dire each grand juror as to the precise nature of the relationship, we are satisfied, based upon each juror's unequivocal response, that the jurors' impartiality was not compromised. Moreover, the salient [*3]evidence against defendant during the grand jury presentment not only came from the testimony of the witnesses, but from the extensive video footage that captured the three controlled buys by the CI. Thus, although the prosecutor should have questioned the three grand jurors about their relationships with the witnesses before accepting their assurances of impartiality we find no articulable likelihood of, or potential for, prejudice stemming from the grand jurors' prior knowledge of the witnesses in question (see People v Henriquez, 173 AD3d at 1269; People v Malloy,166 AD3d at 1304). Based on the facts and circumstances of this case, we do not find the exceptional remedy of dismissal to be warranted (see People v Henriquez, 173 AD3d at 1269; People v Malloy,166 AD3d at 1304).
Defendant's assertion that the People intentionally elicited false evidence from one of the investigator witnesses is not supported by the record. In this case, the investigator testified that the CI did not have contact with anyone other than defendant. While it is uncontroverted that the CI did in fact have limited contact with another passerby,[FN1] this limited interaction, especially given all of the other evidence, is not enough to prejudice the grand jury. Nor is there any evidence in the record that the People made an intentional decision to elicit false testimony from the investigator or otherwise acted in bad faith (see People v West, 166 AD3d 1080, 1082 [3d Dept 2018], lv denied 32 NY3d 1129 [2018]; People v Coleman, 155 AD3d 1097, 1098 [3d Dept 2017], lv denied 30 NY3d 1114 [2018]). As to defendant's assertion that the interaction was circumvented by the People, the record demonstrates that the prosecutor repeatedly instructed the grand jury that they could vote to watch the entire contents of each video. More importantly, the investigator's inaccurate testimony goes to the investigator's credibility, "a collateral issue to the basic one which the [g]rand [j]ury had to decide, namely, whether there was legally sufficient evidence that a crime had been committed and reasonable cause to believe that defendant committed it" (People v Hansen, 290 AD2d 47, 51 [3d Dept 2002] [internal quotation marks, brackets, ellipsis and citation omitted], affd 99 NY2d 339 [2003]). Even absent the investigator's inaccurate testimony, the remaining evidence before the grand jury was sufficient as it included both investigators' consistent accounts of each controlled buy and the footage depicting each of the controlled buys. Under these circumstances, we find that the admission of the investigator's inaccurate testimony did not rise to the level of impairing the integrity of the grand jury proceedings (see People v Jenne, 224 AD3d at 955; People v West, 166 AD3d at 1082; People v Coleman, 155 AD3d at 1098).
Finally, we affirm Supreme Court's summary denial of defendant's motion to set aside the judgment of conviction. At the time of the motion, defendant's appellate counsel was in the [*4]process of appealing the judgment. As such, the denial of defendant's motion was proper since appellate relief was available and defendant failed to demonstrate the existence of pertinent evidence extraneous to the record (see CPL 440.10 [2] [b]; People v Coleman, 155 AD3d at 1098; People v Griffin, 115 AD2d 902, 904 [3d Dept 1985], lv denied 67 NY2d 884 [1986]).
Garry, P.J., Clark, Aarons and Ceresia, JJ., concur.
ORDERED that the judgment and the order are affirmed.

Footnotes

Footnote 1: Video of this encounter reveals this interaction to be a perfunctory conversation with a person soliciting money from the CI.